12-513(L)
United States v. Young

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand fourteen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          SUSAN L. CARNEY,
                    *Circuit Judges.*
-----------------------------------------------------------------------
UNITED STATES OF AMERICA,
                    *Appellee*,

          v.                                    No. 12-513(L)
                                                No. 12-1054(CON)
DAVON YOUNG, THOMAS CHAMBLISS, also known       No. 12-1328(CON)
as TC, and GREGORY FULLER, also known as Murder,
                    *Defendants-Appellants.*
-----------------------------------------------------------------------
APPEARING FOR APPELLANTS:     JOSEPH A. VITA, ESQ., Port Chester, New York, *for Appellant Davon Young*.

                              STEPHEN R. LEWIS, Stephens, Baroni, Reilly & Lewis, LLP, White Plains, New York, *for Appellant Thomas Chambliss*.

                              B. ALAN SEIDLER, ESQ. New York, New York, *for Appellant Gregory Fuller*.

1

APPEARING FOR APPELLEE: RICHARD A. COOPER (Justin Anderson, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from judgments of the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments entered on January 31, 2012, with respect to Davon Young and Gregory Fuller, and March 12, 2012, with respect to Thomas Chambliss, are AFFIRMED.

Defendants Young, Chambliss, and Fuller stand convicted after trial of various substantive and conspiratorial counts of narcotics trafficking, robbery, firearms possession, and murder. On this appeal, defendants charge the district court with multiple trial and sentencing errors. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Defendants' Trial Challenges

    a.    Young's Hearsay Challenges

Young challenges the admission of various out-of-court statements by non-testifying co-defendant Chambliss that inculpated Young in the robbery and murder of Tyrone Bergmann. Although we normally review evidentiary decisions for abuse of discretion, reversing only if we identify "manifest error" that affected "substantial rights," United States v. Miller, 626 F.3d 682, 689–90 (2d Cir. 2010), because Young did not

object to the admission of these statements at trial, our review is limited to plain error. See United States v. Marcus, 560 U.S. 258, 262 (2010) (requiring showing of (1) error; (2) that is clear or obvious; (3) affecting substantial rights, which in ordinary case means affecting outcome of district court proceedings; and (4) seriously affecting fairness, integrity, or public reputation of judicial proceedings).

We identify no error, let alone plain error, here because the Chambliss statements testified to by Katherine Fernandez, Matthew Payton, and Jose Rivera were admissible as co-conspirator statements. See Fed. R. Evid. 801(d)(2)(E); United States v. Coppola, 671 F.3d 220, 246 (2d Cir. 2012) (holding statement admissible under Fed. R. Evid. 801(d)(2)(E) where preponderance of evidence shows (1) conspiracy, (2) whose members included declarant and party against whom statement is offered, and (3) statement made during course and in furtherance of conspiracy).

Specifically, Chambliss's statements to Fernandez and those made to Young, which were overheard by Rivera, satisfied the third requirement because they apprised the listeners of "the progress or status of the conspiracy," specifically, the result of the robbery of Bergmann. United States v. Desena, 260 F.3d 150, 158 (2d Cir. 2001) (internal quotation marks omitted). Chambliss's statements to Payton also furthered the charged narcotics conspiracy insofar as they referenced a plot to retaliate against co-defendant Fuller for providing a statement to law enforcement. See United States v. Arrington, 867 F.2d 122, 130 (2d Cir. 1989) (stating that "plot to silence witnesses furthers the goals" of narcotics conspiracy).

b.    <u>Rebuttal Summation</u>

Insofar as Young and Chambliss argue that the prosecution's rebuttal statements deprived them of a fair trial, they bear a "heavy burden" because they must show not only that the remarks were objectionable, but also that the errors were so serious as to permeate the entire trial and deny them due process.   <u>See, e.g.</u>, <u>United States v. Williams</u>, 690 F.3d 70, 74–75 (2d Cir. 2012).   That is not this case.

First, the prosecutor's statement that Young and Chambliss would receive a "free pass" for the Bergmann murder if the jury found that killing in furtherance only of a small drug deal and not part of a robbery, as required by 18 U.S.C. § 924(j), was in response to the defense argument that defendants should be acquitted of that charge because they never intended to rob the victim.   The law affords the prosecution some latitude in responding to defense arguments.   <u>See</u> <u>United States v. Farhane</u>, 634 F.3d 127, 168 (2d Cir. 2011); <u>see also</u> <u>United States v. Wilner</u>, 523 F.2d 68, 74 (2d Cir. 1975).   In any event, even if the challenged comment here crossed the line of fair response, defendants could not demonstrate a denial of due process because the district court sustained the defense objection and reminded the jury that it would instruct them on the applicable law.   Rather than endorse the government's position, this instruction admonished the jury not to rely on the prosecutor's argument in lieu of the law, thereby safeguarding against a due process denial.   <u>See</u> <u>United States v. Parkes</u>, 497 F.3d 220, 233–34 (2d Cir. 2007) (referencing "measures adopted to cure" summation error as relevant factor in assessing denial of due process (internal quotation marks omitted)).

Second, the prosecutor did not improperly vouch for government witnesses. As to witness Rivera, the prosecutor stated that he "asked [Rivera] on redirect, 'Did you think Chambliss was talking crap about the robbery and the murder?' [Rivera] said he wasn't, he was telling the truth." A. 59.2. While defendants submit that in the quoted statement the prosecutor was himself representing that Rivera had been truthful, the statement is more reasonably construed to state that Rivera had assured the jury that he had understood Chambliss to be stating the truth about the robbery and murder. See United States v. Farhane, 634 F.3d at 167 (observing that reviewing court will not "lightly infer that every remark is intended to carry its most dangerous meaning" (internal quotation marks omitted)). In short, defendants have failed to demonstrate vouching, much less a denial of due process.

The same conclusion obtains for Chambliss's challenge to prosecution arguments concerning cooperating witnesses' motives to tell the truth. In response to defense attacks on these witnesses' credibility, the prosecutor was entitled to argue that they had a strong motive to tell the truth because false testimony would subject them to adverse consequences under their cooperation agreements. See United States v. Carr, 424 F.3d 213, 228 (2d Cir. 2005).

Third, the prosecutor did not misstate the evidence by characterizing Young's prior state convictions for drug crimes as lenient because the statement was made to urge defendants' knowledge that drug crimes carried lesser penalties than robberies and thereby to discredit the defense theory that the Bergmann murder was not part of a robbery. See

5

United States v. Myerson, 18 F.3d 153, 163 (2d Cir. 1994) (rejecting challenge to prosecutor's comments that sought to expose motive behind defense attack on government case). Additionally, having reviewed the record, we conclude that the prosecutor did not mischaracterize Young's statements about being "hungry" and "need[ing] money" or the police officer's testimony about the color of the cocaine seized from the Bergmann murder.

Finally, the prosecutor did not act improperly in characterizing certain arguments as "red herring[s]" intended to "distract[]" the jury. A. 54, 59.1. See United States v. Williams, 690 F.3d at 75 ("[W]e do not think it improper or excessive, without more, for a prosecutor to criticize defense arguments as merely being attempts to 'grasp at straws' or 'focus on distractions.'"). Nor did he do so in stating that the defense was "ridicul[ing] police officers," A. 59.2, in response to the defense's assertion that police witnesses were racially biased. See United States v. Farhane, 634 F.3d at 168.

Thus, defendants' challenges to the rebuttal summation fail on the merits.

c.        District Court Instructions

"As a general matter, we review a properly preserved claim of error regarding jury instructions de novo, reversing only where, viewing the charge as a whole, there was a prejudicial error." United States v. Ghailani, 733 F.3d 29, 52 (2d Cir. 2013) (internal quotation marks omitted). Where a defendant fails to object before the district court, we review only for plain error. See id.

6

### i. Chambliss

Chambliss's challenge to the instruction on liability under Pinkerton v. United States, 328 U.S. 640 (1946), fails because, consistent with well established law, the district court charged the jury that it could hold a defendant liable for acts of his co-conspirators so long as the defendant "could reasonably have foreseen that the substantive crime might be committed by his co-conspirators," Tr. 2769. See United States v. Coplan, 703 F.3d 46, 71 (2d Cir. 2012); United States v. Parkes, 497 F.3d at 232. The court's instruction that liability could therefore attach even though defendant "did not personally participate in the acts constituting the crime or did not have actual knowledge of it," Tr. 2770, was thus proper, and, contrary to Chambliss's contention, did not permit the jury to find him strictly liable for the acts of his co-conspirators. See United States v. Mittlestaedt, 31 F.3d 1208, 1219 (2d Cir. 1994) (stating that conspirator is liable for "all unlawful acts of the conspiracy that are reasonably foreseeable, even without direct knowledge of them").

### ii. Fuller

For the first time on appeal, Fuller asserts that the district court erroneously explained guilt beyond a reasonable doubt as "an abiding belief of the defendants' guilt, such as a belief as [sic] a prudent person would be willing to act upon in important matters in the personal affairs of his or her own life." Tr. 2717. In reviewing for plain error, we do not identify any error that was "clear or obvious." United States v. Marcus, 560 U.S. at 262. "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular

7

form of words be used in advising the jury of the government's burden of proof." Victor v. Nebraska, 511 U.S. 1, 5 (1994) (internal citation omitted). Here, the district court's use of the phrase "abiding belief" sufficiently conveyed the concept of reasonable doubt. See United States v. Bright, 517 F.2d 584, 587 (2d Cir. 1975) (explaining that conviction may not stand without "abiding belief" of defendant's guilt); see also United States v. Bright, 528 F. App'x 88, 91 (2d Cir. June 27, 2013) (approving "abiding belief" instruction). Indeed, the district court's other formulations of reasonable doubt, including its use of the common "hesitate to act" language and its contrast with the preponderance standard in discussing venue, preclude a conclusion that the instruction adversely affected Fuller's substantial rights. See Vargas v. Keane, 86 F.3d 1273, 1279 (2d Cir. 1996) (observing that "hesitate to act" formulation, although subject to some criticism, "has consistently been approved").

Thus, we reject Fuller's challenge to the district court's reasonable doubt instruction.

### iii.    Young

During its deliberations, the jury asked, "If we determine that a narcotics conspiracy exists are all members of that conspiracy held accountable for any drugs sold or firearms used?" A. 78. In response, the district court instructed the jury, in relevant part, that if a defendant "joins a conspiracy in progress, he is responsible for everything that was done beforehand, if it's within the scope of what he's agreeing to and he's aware of it." Id. 98–99.

8

Contrary to Young's claim that this instruction permitted the jury erroneously to find him responsible for crack cocaine quantities trafficked by others, this was an accurate statement of law. See United States v. Jackson, 335 F.3d 170, 181 (2d Cir. 2003) ("Under well-established law, Jackson was responsible not only for the cocaine that he himself conspired to import but also for the cocaine his co-conspirators conspired to import, provided he knew of his co-conspirator's illicit activities or the activities were reasonably foreseeable by him."). It is thus immaterial whether the United States Sentencing Commission has taken a contrary position as to application of the Guidelines. See generally United States v. Kinder, 64 F.3d 757, 759 (2d Cir. 1995) ("[T]he amendment to the Guidelines had no effect on the method of determining weight for the purpose of applying the mandatory minimum sentence."). In any event, the allegedly erroneous instruction did not prejudice Young because, as the district court determined, the evidence at trial established that he was personally responsible for more than 50 grams of cocaine.

Accordingly, all defendants' challenges to the jury instructions fail on the merits.

d.      Sufficiency of the Evidence

We review Young's and Chambliss's sufficiency challenges de novo and will reject the claims as meritless if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); accord United States v. Jones, 531 F.3d 163, 168 (2d Cir. 2008).

i.    Young

Young asserts that the evidence supporting his convictions for the narcotics conspiracy charged in Count One, see 21 U.S.C. §§ 841(b)(1)(A), 846, and the Hobbs Act robbery charged in Count Five, see 18 U.S.C. § 1951, is insufficient as a matter of law. We disagree.

To prove the Count One narcotics conspiracy, the government had to establish (1) the existence of the conspiracy, (2) defendant's knowing and intentional joinder in the conspiracy, and (3) that it was "either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged," here, 50 grams or more of crack cocaine. United States v. Santos, 541 F.3d 63, 70–71 (2d Cir. 2008). Young's challenge focuses on the last requirement and fails because the trial evidence shows that over a four-year period numerous conspirators regularly sold crack cocaine, including cooperating witness Jamaal Manners, who testified that he personally sold at least ten to fifteen grams of the conspiracy's crack cocaine per week. The jury was entitled to find that these co-conspirators' narcotics sales were reasonably foreseeable to Young in light of substantial evidence of his own participation in the conspiracy, including his 2005 arrest for possession of crack cocaine. See id. at 74 (upholding conspiracy conviction where defendant knew that co-conspirator was "heavy-selling" cocaine dealer and defendant "took an active interest" in narcotics trafficked).

Young also asserts that the trial evidence was insufficient to satisfy the interstate commerce element of the Count Five robbery. See 18 U.S.C. § 1951(a); United States v.

10

Celaj, 649 F.3d 162, 168 (2d Cir. 2011). It is "well established," however, that the burden of proving a nexus to interstate commerce is "minimal" and is satisfied if "the defendant's conduct produces any interference with or effect upon interstate commerce, whether slight, subtle, or even potential." United States v. Celaj, 649 F.3d at 168 (internal quotation marks and alterations omitted). Here, Count Five robbery victim Payton testified that he was a crack cocaine dealer and that Young and Fuller stole approximately $700 of his narcotics proceeds. This was sufficient to satisfy the nexus requirement. See United States v. Needham, 604 F.3d 673, 680 (2d Cir. 2010) (stating that robbery conspiracy that targets proceeds from cocaine sales "undoubtedly" meets nexus requirement).

Accordingly, Young's sufficiency challenges are meritless.

ii.     Chambliss

Chambliss's sufficiency challenges pertain to his convictions for use of a firearm in furtherance of a narcotics conspiracy, charged in Count Two, see 18 U.S.C. § 924(c), and use of a firearm in a robbery resulting in the Bergmann murder, charged in Count Eleven, see id. § 924(j). To sustain these convictions, the evidence had to permit a reasonable jury to find that Chambliss (1) personally violated § 924(c), (2) aided and abetted a confederate's violation, or (3) was liable under Pinkerton for his co-conspirator's reasonably foreseeable use of firearms. See United States v. Masotto, 73 F.3d 1233, 1240 (2d Cir. 1996) (explaining aiding and abetting and Pinkerton as distinct theories for § 924(c) liability).

11

As to aiding and abetting, sufficient evidence supported the jury's finding that Chambliss (1) assisted the underlying offense or the use, carry, or possession of a firearm (2) with advance knowledge of that firearm-related conduct. See Rosemond v. United States, No. 12-895, --- U.S. ---, 2014 WL 839184, at *2 (Mar. 5, 2014). Specifically, Chambliss's knowledge that Young would use a firearm in committing the robbery could reasonably be inferred from, among other things, the fact that Chambliss recruited Young and Fuller to rob Bergmann (in furtherance of their narcotics conspiracy) only ten days after these confederates had committed another robbery at gunpoint. See United States v. Cain, 671 F.3d 271, 302–03 (2d Cir. 2012) (instructing that we "must review the evidence in the light most favorable to the government" in assessing sufficiency challenge, mindful that "verdict may be based on circumstantial evidence" (internal quotation marks omitted)); see also United States v. Salameh, 152 F.3d 88, 143 (2d Cir. 1998) (stating that "as a general rule most evidence of intent is circumstantial").

In urging otherwise, Chambliss argues that the district court's Pinkerton instruction somehow rendered erroneous its aiding and abetting charge. In fact, a review of the charge demonstrates that the district court clearly identified aiding and abetting and Pinkerton as distinct theories of liability. As to the former, the district court instructed, in accordance with United States v. Medina, 32 F.3d 40, 45 (2d Cir. 1994), that such liability attached under § 924(c) if the defendant "performed some act that facilitated or encouraged the actual using, carrying of, or possession of the firearm in relation to the underlying crime," Tr. 2758. By finding that Chambliss encouraged the "actual using, carrying of, or

12

possession" of a firearm in the Bergmann robbery, the jury necessarily also had to find that he had advance knowledge of the firearm-related conduct, consistent with the Supreme Court's explication in Rosemond.

In any event, even if there had been error regarding aiding and abetting, it was harmless because ample evidence supported Chambliss's liability under Pinkerton. See Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (applying harmless error standard where jury returned general guilty verdict after being instructed on alternative theories of guilt, one of which was erroneous); accord United States v. Vilar, 729 F.3d 62, 79 (2d Cir. 2013); cf. Rosemond v. United States, 2014 WL 839184, at *11 (remanding for lower courts to consider whether "any error in the court's aiding and abetting instruction was harmless"). The aforementioned trial evidence demonstrates that it was reasonably foreseeable to Chambliss that the armed robbers he recruited for the Bergmann robbery would use a firearm in that crime. See United States v. Parkes, 497 F.3d at 232 (stating that confederates' killing was "necessary or natural consequence of the unlawful agreement" to commit armed robbery sufficient to establish Pinkerton liability (internal quotation marks omitted)).

Accordingly, Chambliss's sufficiency challenges fail on the merits.

2.    Defendants' Sentencing Challenges

We review defendants' sentences for "reasonableness," "a particularly deferential form of abuse-of-discretion review" that we apply both to the procedures used to arrive at the sentence and to the substantive length of the sentence. United States v. Cavera, 550

13

F.3d 180, 188 & n.5 (2d Cir. 2008) (en banc); accord United States v. Broxmeyer, 699 F.3d 265, 278 (2d Cir. 2012).

a.      Procedural Reasonableness

In reviewing for procedural reasonableness, we review de novo challenges to the district court's statutory interpretation.   See United States v. Cassesse, 685 F.3d 186, 188 (2d Cir. 2012).

i.      Young's Mandatory Consecutive 25-year Sentence Under § 924(j)

Young asserts that the district court committed procedural error in imposing a 25-year consecutive sentence for the Count Eleven Bergmann murder under 18 U.S.C. § 924(j) because that provision does not incorporate § 924(c)'s penalty enhancements, specifically, 25-year minimum sentences for "second or subsequent" § 924(c) convictions, 18 U.S.C. § 924(c)(1)(C)(i), and mandatory consecutive sentencing, see id. § 924(c)(1)(D)(ii).   The statute does not support this contention.

Section 924(j)(1) authorizes the death penalty or life in prison for murder committed "in the course of a violation of subsection (c)."   Id. § 924(j)(1).   This unqualified reference to § 924(c) incorporates the entirety of that subsection, including its enhanced penalties, and thus defeats Young's claim of procedural error.   See United States v. Robinson, 702 F.3d 22, 31 (2d Cir. 2012) (stating that statutory interpretation is "holistic endeavor" in which courts must consider "not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme" (internal quotation marks omitted)); see also United States v. Berrios, 676 F.3d 118, 140–41 (3d Cir. 2012)

14

(holding that § 924(j)'s reference to § 924(c) incorporates latter provisions' penalty enhancements, including consecutive sentence mandate, § 924(c)'s "veritable raison d'etre"). In light of this explicit incorporation, § 924(j)'s failure to repeat the penalty enhancements set forth in § 924(c) does not evince Congressional intent to permit concurrent sentencing and to eliminate mandatory minimum sentences. See United States v. Allen, 247 F.3d 741, 769 (8th Cir. 2001) ("Although § 924(j) does not explicitly contain the same express mandatory cumulative punishment language as found in § 924(c), it incorporates § 924(c) by reference without disclaiming the cumulative punishment scheme which is so clearly set out in § 924(c)."), vacated on other grounds, 536 U.S. 953 (2002). But see United States v. Julian, 633 F.3d 1250, 1253 (11th Cir. 2011) (concluding that statutes' plain language establishes § 924(j) as separate offense not subject to § 924(c)'s penalty enhancements).

This conclusion finds further support in the fact that Young's proposed construction would apply § 924(c)'s sentencing enhancements to a defendant who uses a firearm in a crime of violence, but not one who murders in such situations, an unlikely result we aim to avoid. See United States v. Al Kassar, 660 F.3d 108, 125 (2d Cir. 2013) (interpreting statute "to prevent absurd results"); see also United States v. Berrios, 676 F.3d at 118 (characterizing such § 924(j) interpretation as "anomalous"); United States v. Battle, 289 F.3d 661, 668 (10th Cir. 2002); United States v. Allen, 247 F.3d at 769.

Accordingly, although § 924(j)'s authorization of the death penalty and life imprisonment likely indicates that it is a stand-alone offense whose elements must be

15

found by a jury beyond a reasonable doubt, see generally Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding facts that increase statutorily-authorized maximum penalty elements of separate offense), that provision incorporates the penalty enhancements of § 924(c), and thus the district court did not err in sentencing Young to a consecutive 25-year prison term for Count Eleven.

In urging the contrary, Young asserts that § 924(j) does not mandate minimum and consecutive sentences because to hold otherwise would render superfluous § 924(c)(5), which, like § 924(j), authorizes the death penalty and life imprisonment for death caused by armor-piercing bullets. See 18 U.S.C. § 924(c)(5); United States v. Julian, 633 F.3d at 1255–56. But the statutes govern distinct circumstances as § 924(j) criminalizes murder through use of a firearm and § 924(c)(5) punishes death caused by certain ammunition. That the two provisions may both apply to one set of facts does not render either unnecessary; indeed, federal statutes frequently overlap. See United States v. Kim, 193 F.3d 567, 573 (2d Cir. 1999) (stating that statutes "may 'overlap' or enjoy a 'partial redundancy,' . . . and yet be 'fully capable of coexisting'" (quoting United States v. Batchelder, 442 U.S. 114, 118, 122 (1979)).

In any event, vacatur for re-sentencing is unnecessary because any error in the district court's construction of § 924(j) was harmless. If, as Young urges, § 924(j) establishes a separate offense not bound by § 924(c)'s penalty enhancements, then the district court would not have dismissed after trial Count Ten, which charged a violation of § 924(c) for the Bergmann murder, as a lesser-included offense of Count Eleven, and thus

16

would have been required to impose a consecutive prison sentence of at least 25 years on Count Ten.   See 18 U.S.C. § 924(c)(1)(C)(i), (D)(ii); see also United States v. Julian, 633 F.3d at 1256 ("Our interpretation of section 924(j) does not prevent a district court from imposing a sentence under section 924(c) that must run consecutive to a separate sentence imposed under section 924(j)."). Accordingly, regardless of whether Young should have been sentenced on Count Eleven under § 924(j) or on Count Ten under § 924(c), the district court was obliged to impose a consecutive sentence of at least 25 years, rendering any asserted procedural error harmless.   See United States v. Jass, 569 F.3d 47, 68 (2d Cir. 2009).

For these reasons, Young's challenge to his 25-year consecutive sentence for the Bergmann murder charged in Count Eleven fails.

### ii.      Young's and Fuller's Multiple § 924(c) Convictions

Young and Fuller assert that the district court erred in imposing multiple sentences for use of firearms in furtherance of a narcotics conspiracy (Count Two), and the Payton, Cy Sherrill (as to Fuller only), and Bergmann robberies (Counts Six, Eight, and Eleven, respectively). Young maintains that the jury must have convicted him under Count Two for the same conduct underlying either Count Six or Count Eleven, thereby requiring vacatur of one of the latter § 924(c) convictions. Fuller asserts generally that the government may not pursue in a single indictment multiple consecutive sentences with enhanced mandatory minimum penalties under § 924(c). The law does not support these arguments.

17

Separate convictions under § 924(c) ordinarily trigger mandatory minimum, consecutive sentences: 5 years for a first offense and 25 years for each subsequent infraction.  See 18 U.S.C. § 924(c)(1).  Contrary to Fuller's contention, multiple § 924(c) convictions may stem from a single indictment.  See United States v. Bernier, 954 F.2d 818, 819–20 (2d Cir. 1992).  To be sure, two § 924(c) convictions that are based on a "single unit of prosecution," i.e., that "punish a defendant twice for continuous possession of a firearm in furtherance of co-terminous predicate offenses involving essentially the same conduct," cannot stand.  United States v. Wallace, 447 F.3d 184, 187–88 (2d Cir. 2006) (internal quotation marks omitted); see also United States v. Finley, 245 F.3d 199, 208 (2d Cir. 2001) (stating that Congress did not intend to impose multiple consecutive sentences for two criminal infractions that "are so inseparably intertwined").  But Young's Count Two conviction, which alleged discharge of a firearm in furtherance of the Count One narcotics conspiracy, was not necessarily based on the conduct underlying the other § 924(c) convictions.  Notably, evidence was adduced that Young pleaded guilty to possession of a firearm on Elm Street, where many witnesses testified that Young had also trafficked narcotics.  Indeed, Young separately pleaded guilty to possession of crack cocaine near Elm Street.  The robberies at issue in Counts Six and Eleven did not occur on Elm Street.  Thus, the evidence permitted a reasonable jury to find that the predicate conduct underlying Count Two was not the same conduct referred to in Counts Six and Eleven.  See United States v. Mejia, 545 F.3d 179, 205–06 (2d Cir. 2008) (upholding

18

multiple § 924(c) convictions where defendant committed three separate assaults, even though they were connected by single conspiracy).

In urging otherwise, Young stresses that the only direct evidence of the discharge of a firearm relates to the Bergmann murder, arguing that the § 924(c) conviction for the offense charged in Count Two must be predicated on the conduct supporting either the convictions for the offenses charged in Count Six or Count Eleven. But direct evidence was not necessary for the jury to find the Count Two conduct distinct from that charged in Counts Six and Eleven. See United States v. Cain, 671 F.3d at 303 (recognizing that verdict may be based only on circumstantial evidence). Because we must resolve all reasonable inferences from the evidence in favor of the verdict, see id. at 302, Young's challenge fails.[1]

### iii. Consideration of Fuller's Youthful Offense

Fuller also asserts for the first time on appeal that his youthful offender status when sentenced to one year in prison on his 2003 state conviction for possession of a controlled substance mandates the conclusion that he did not commit a "felony drug offense" and therefore was not eligible for a 20-year mandatory minimum sentence for Count One. See

---

[1] Young's failure to request a jury instruction explaining that the conduct underlying Count Two must be distinct from that supporting Counts Six and Eleven reinforces this conclusion. See United States v. Washington, 861 F.2d 350, 352–53 (2d Cir. 1988) (explaining that "where an impermissible basis of conviction arises from an insufficiency of evidence and a valid basis remains on an alternative theory, a defendant must request the trial judge not to submit the invalid basis to the jury or else the objection will be deemed waived"); accord United States v. Irving, 554 F.3d 64, 77 (2d Cir. 2009).

21 U.S.C. § 841(b)(1)(A) (providing 20-year mandatory minimum for § 841(a) violation "after a prior conviction for a felony drug offense").

Fuller's claim warrants no extended discussion because, as he recognizes, we have previously rejected this precise argument. See United States v. Jackson, 504 F.3d 250, 253 (2d Cir. 2007) (reaching "logical conclusion" that "youthful offender adjudication is a prior 'felony drug offense'"); United States v. Sampson, 385 F.3d 183, 194–95 (2d Cir. 2004) (concluding that criminal conduct underlying youthful offender adjudication qualifies as "felony drug offense"). Although Fuller contends that Jackson and Sampson were wrongly decided, these decisions bind this panel unless and until they are overruled by this court en banc or by the Supreme Court. See Baraket v. Holder, 632 F.3d 56, 59 (2d Cir. 2011).

iv. *Alleyne* Challenges

In his reply brief, Chambliss asserts that his 18 U.S.C. § 924(j) conviction for the Bergmann murder must be vacated in light of Alleyne v. United States, 133 S. Ct. 2151, 2163–64 (2013), which held that any fact increasing the mandatory minimum sentence is an element of the crime and must be found by the jury beyond a reasonable doubt. Young joins in this argument to challenge his conviction for the Bergmann murder and for the use of a firearm during the Payton robbery. The argument fails because these defendants' § 924 convictions, which triggered mandatory minimum, consecutive sentences of 25 years for the Bergmann murder and the use of a firearm during the Payton robbery, see 18

20

U.S.C. § 924(c)(1)(C)(i) (mandating 25-year sentence for "second or subsequent conviction" under § 924(c)), were found by the jury, not the district court.

v.      <u>Retroactive Application of the Fair Sentencing Act</u>

Young and Chambliss challenge the district court's refusal retroactively to apply the Fair Sentencing Act of 2010, which would have reduced the mandatory minimum sentence for their Count One narcotics conspiracy convictions from ten to five years. The government concedes error in light of <u>Dorsey v. United States</u>, 132 S. Ct. 2321, 2331 (2012) (concluding that Fair Sentencing Act applies to all defendants sentenced after enactment), but argues harmlessness because the district court indicated that it would have imposed the same sentence on that count of conviction regardless of the mandatory minimum penalty.

"Where we identify procedural error in a sentence, but the record indicates clearly that 'the district court would have imposed the same sentence' in any event, the error may be deemed harmless . . . ." <u>United States v. Jass</u>, 569 F.3d at 68 (quoting <u>United States v. Cavera</u>, 550 F.3d at 197). This is such a case. In stating the reasons for its 10-year sentence on Count One, the district court clearly stated that "this is probably one of the rare cases where I actually would find independently that a minimum of ten years is appropriate given the nature of and length of the drug dealing in this case." A. 223. The district court further noted with respect to Young and Chambliss that it was reducing the sentences on certain counts in contemplation of the mandatory consecutive sentences required on other counts because it was imposing a sentence that was essentially a "sentencing package."

21

Taking these statements together, we can "confidently conclude" that the district court's application of a 10-year mandatory minimum sentence for the narcotics conspiracy constitutes harmless sentencing error.   United States v. Jass, 569 F.3d at 68.

      b.      Fuller's Substantive Reasonableness Challenge

In challenging the substantive reasonableness of his 100-year prison sentence, Fuller bears a heavy burden because we will set aside a district court's substantive determination only in exceptional cases where the trial court's decision "cannot be located within the range of permissible decisions."   United States v. Cavera, 550 F.3d at 189 (internal quotation marks omitted); see United States v. Jones, 531 F.3d at 174 (recognizing that broad range of sentences can be reasonable in particular case).   Thus, we do not substitute our own judgment for that of the sentencing court; we ask only whether challenged sentences are so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law," that allowing them to stand would "damage the administration of justice."   United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009); accord United States v. Broxmeyer, 699 F.3d at 289.   That is not this case.

Fuller asserts that his sentence was substantively unreasonable because the district court failed to give sufficient mitigating weight to his troubled upbringing and positive behavior in prison.   To the contrary, the district court specifically considered such facts and weighed them in its decision to impose the sentence.   "The weight to be afforded any given argument made pursuant to one of the § 3553(a) factors is a matter firmly committed to the discretion of the sentencing judge and is beyond our review, as long as the sentence

22

ultimately imposed is reasonable in light of all the circumstances presented." <u>United States v. Fernandez</u>, 443 F.3d 19, 32 (2d Cir. 2006). Indeed, the district court was required to impose at least a 90-year sentence by virtue of the fact that § 924(c) requires that the mandatory minimum sentences for the convictions for the offenses charged in Count One (10 years), Count Two (5 years), Count Six (25 years), Count Eight (25 years), and Count Eleven (25 years), be applied consecutively. Thus, we identify no substantive error in the district court's decision to impose ten years above the effective minimum.

3.      Conclusion

We have considered defendants' remaining arguments and conclude that they are without merit. We therefore AFFIRM the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

23