**12-3786-cr**
*United States v. Fazio*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: SEPTEMBER 20, 2013
DECIDED: OCTOBER 22, 2014

Nos. 12-3786-cr, 12-3799-cr, 12-3874-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ANTHONY FAZIO, SR., AKA SEALED DEFENDANT 1, JOHN FAZIO, JR.,
AKA SEALED DEFENDANT 3, ANTHONY FAZIO, JR., AKA SEALED
DEFENDANT 2, AKA ANTHONY FAZIO, ERNEST ORGEL
*Defendants-Appellants.*

————

Before: WALKER, LEVAL, WESLEY, *Circuit Judges.*

————

Defendants appeal their convictions after a trial in the United States District Court for the Southern District of New York (Forrest, *J.*), on numerous grounds. Defendants were convicted of various crimes, including extortion, associated with their receipt of allegedly illegal labor payments. In this opinion we address the district court's (1) ruling that permitted evidence of defendants' ties to organized crime; (2) denial of a requested jury charge that the "fear" element of

extortion cannot be satisfied by a threat of loss of economic advantage to which the victim was not legally entitled; and (3) dismissal of a juror during the trial. We find no error in these rulings and affirm the judgment of the district court.

We have considered all the remaining arguments raised by defendants and find them to be without merit.

_____

RICHARD WARE LEVITT, Levitt & Kaizer, New York, NY, *for Defendant-Appellant Anthony Fazio, Jr.*

MARC FERNICH, New York, NY, *for Defendant-Appellant Anthony Fazio, Sr.*

RONALD P. FISCHETTI, PHYLLIS A. MALGIERI, Fischetti & Malgieri LLP, New York, NY, BARRY A. BOHRER, ELI J. MARK, Schulte Roth & Zabel LLP, New York, NY *for Defendant-Appellant John Fazio, Jr.*

CHI T. STEVE KWOK (Peter M. Skinner, Brian R. Blais, Justin S. Weddle, on the brief), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY *for Appellee.*

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Anthony Fazio, Sr. ("Fazio Senior"), Anthony Fazio, Jr. ("Fazio Junior"), and John Fazio, Jr. ("John Fazio"), who were officers in Local 348 of the United Food and Commercial Workers International Union, demanded that business owners that employed Local 348

members make payments to the Fazios to ensure a good working relationship with the union. At trial, the government produced evidence from which the jury could conclude that the Fazios' demands for money were accompanied by threats of economic and physical harm. All three defendants were indicted for: (1) racketeering conspiracy in violation of 18 U.S.C. § 1962(d); (2) racketeering in violation of 18 U.S.C. § 1962(c); (3) extortion conspiracy in violation of the Hobbs Act, 18 U.S.C. § 1951; and (4) receiving unlawful labor payments in violation of 29 U.S.C. § 186(b)(1), d(2). Fazio Senior and John Fazio were also indicted for conspiracy to commit money laundering in violation of the Hobbs Act, 18 U.S.C. § 1956(h). Fazio Senior was additionally indicted for witness tampering in violation of 18 U.S.C. § 1512(b)(1), (2). After a jury trial in the United States District Court for the Southern District of New York (Forrest, *J.*), each defendant was convicted of all of the crimes with which he was charged. The district court sentenced Fazio Senior, Fazio Junior, and John Fazio, respectively, to imprisonment terms of 151 months, 60 months, and 135 months.

On appeal, the Fazios challenge their convictions on a variety of grounds. In this opinion we address three errors appellants assert

4

were made by the district court: (1) the ruling admitting evidence of defendants' ties to organized crime; (2) the denial of a requested jury charge that the "fear" element of extortion cannot be satisfied by a threat of loss of economic advantage to which the victim was not legally entitled; and (3) the dismissal during trial of a juror. For the reasons stated below, we find no error and affirm the judgment of the district court.

Defendants' remaining arguments are without merit.

## DISCUSSION

### I.      Background

From at least some time in 1989, up through and including June 2011, the Fazios, who ran Local Union 348, participated in a scheme to enrich themselves by extorting payments from business owners whose employees were members of the local. At trial, witnesses testified that either before or shortly after they entered into a union contract with Local 348, one or more of the defendants would tell them that, yearly, and sometimes twice yearly, side payments to the Fazios would be required to ensure a good working relationship. Because of the Fazios' collusive relationship with the employers with which they were supposed to be negotiating at

5

arm's length, Local 348 had a reputation for being a "sweetheart" union. However, the Fazios also cultivated a reputation that they and Local 348 were connected to organized crime. And the Fazios used implicit and explicit threats of economic and physical harm to extort the side payments.

Witnesses testified that they felt that they had no choice but to accede to the Fazios' demands for money. For example, one employer whose employees were members of Local 348, Leon Hofman, testified that when he declined John Fazio's demand for around $7,500 to $10,000 per year, John Fazio stated something to the effect of "don't screw around with me." Hofman testified that he became worried about his and his family's safety and started making the payments. Another employer, Elliot Betesh, testified about an incident where people were blocking trucks from delivering merchandise to his warehouse. Betesh said that the group blocking the delivery trucks left a card with Fazio Senior's name on it. Betesh said that the blockade ended after he agreed to a union contract with Local 348 and a yearly side payment of $20,000 to Fazio Senior.

The government also introduced evidence that Local 348 and the Fazios had reputations for having ties to organized crime. For example, employer Samuel Singer testified that he believed that John Fazio was "connected to organized crime." J.A. 239. Recorded phone calls between Mark Cohen, an owner of the retail chain Shoe Mania who did not testify at trial, and John Fazio (the "Shoe Mania calls") also suggested Local 348's connection to organized crime. On these calls the two men discussed installing Local 348 at Cohen's stores. Before one phone call was picked up by John Fazio, but after the recording began, Cohen told his comptroller, Jimmy, why John Fazio can solve his labor issues: "Mafia, Jimmy, Mafioso." On another call, Mark Cohen told John Fazio, "My attorney got your stuff whatever and the lawyer, the lawyer said to my attorney; yeah, ah, ah what's with your union, the union that ah you're trying to, ah, what ah, you know, M-O-B, Mafia union . . . " Appellee's Br. 107; *see* J.A. 541. John Fazio responded, "That's what he said?" Cohen then said, "Yeah, something like that." Fazio responded, "Yeah." *Id.*

Each defendant called a single character witness and offered documentary records into evidence. After one day of deliberations,

7

the jury found each defendant guilty of all counts in which he was charged.

**II.    Evidence of Defendants' Alleged Connection to the Mafia**

Prior to trial, the government moved *in limine* for a ruling admitting testimony by victims that they believed that the Fazios were connected to organized crime. In response, Fazio Junior moved in the alternative either to preclude such evidence on basis that there was no showing that defendants were actually involved in organized crime or, if the evidence was admitted, for a severance. Fazio Junior also moved to exclude the recorded conversations between Mark Cohen, the owner of Shoe Mania, and John Fazio. The district court granted the government's motion to admit the proffered evidence of defendants' alleged ties to organized crime after concluding "that the state of mind of alleged victims of extortion is directly at issue in this case." J.A. 188. And the district court held that severance was unwarranted because Fazio Junior was charged with conspiring with his father and cousin and the reputation of all three of having connections to the mafia was relevant to the guilt of each defendant. J.A. 189

The district court also denied Fazio Junior's motion to exclude the Shoe Mania calls. The district court found that even though Cohen was not a victim of the alleged extortion, Cohen "was speaking directly to [the] reputation of the Fazios generally in connection with Local 348." J.A. 192. In addition, the district court found that the Shoe Mania calls "follow a pattern similar to other alleged conspiratorial behavior and related acts . . . [and] are therefore relevant." J.A. 198. At trial, the district court denied reconsideration of the reputation evidence rulings.

On appeal, Defendants argue that admission of the reputation evidence denied them a fair trial. They contend that the evidence was not admissible because there was no proof that any of the defendants were in fact connected to the mafia. In the alternative, Fazio Junior argues that even if the organized crime evidence was properly admitted, he should have been granted a severance because the evidence unfairly prejudiced him.

*A. Admissibility of evidence*

We review a district court's rulings on the admissibility of trial evidence for abuse of discretion. *United States v. Coplan*, 703 F.3d 46, 80 (2d Cir. 2012). "A district court has abused its discretion if it

based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, alterations and citations omitted).

The admissibility of the organized crime reputation evidence is a function of the nature of the government's required proof, which goes to the fear reasonably experienced by the victims, an element of extortion. Under the Hobbs Act, the government must prove that the defendant "obtain[ed] . . . property from another . . . induced by wrongful use of actual or threatened force, violence or fear," 18 U.S.C. § 1951(b)(2). "[T]he defendant [must] knowingly and willfully create[] or instill[] fear, or use[] or exploit[] existing fear with the specific purpose of inducing another to part with property." *United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012). "Bad reputation is relevant to the fear element in a Hobbs Act conspiracy 'since such a reputation frequently conveys a tacit threat of violence.'" *United States v. Mulder*, 273 F.3d 91, 103 (2d Cir. 2001) (quoting *United States v. Tropiano*, 418 F.2d 1069, 1081 (2d Cir. 1969)).

Defendants argue that the reputation evidence at issue here is inadmissible absent some corroborative evidence that defendants were actually connected to organized crime or knowingly exploited a reputation for such a connection. Defendants' arguments are without merit; the district court did not abuse its discretion in admitting the proffered evidence that Fazio Senior, John Fazio, and Local 348 were reputedly connected to organized crime.

First, after Mark Cohen alerted John Fazio that Local 348 had a reputation in the community as a "mafia union," John Fazio did nothing to refute the allegation.[1] By letting the assertion stand, John Fazio effectively endorsed it and thus exploited it. And second, whether the Fazios were actually connected to organized crime is not dispositive of the admissibility of reputation evidence that tends to show the reasonableness of the victims' fear. The government may use the evidence to demonstrate that a victim's belief that the Fazios were connected to organized crime was reasonable and that the Fazios exploited this belief.

---

[1] Indeed, he seemed to endorse it explicitly. When told by Cohen that Cohen's attorney learned from another attorney that the Union was Mob connected, John Fazio responded, "That's what he said?" Cohen said "Yeah, something like that." And Fazio responded "Yeah." Appellee's Br. 107.

11

*B. Severance*

A district court's decision to deny severance is "virtually unreviewable" and will be overturned only if a defendant can demonstrate prejudice "so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion." *United States v. Stewart*, 433 F.3d 273, 314-15 (2d Cir. 2006) (internal quotation marks and citations omitted). Federal Rule of Criminal Procedure 14 "permits the district court to grant relief from potential prejudice when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 314 (internal quotation marks omitted). The clear preference for joint trials, however, "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (citations omitted).

In the present case, Fazio Junior was alleged to have participated with his father, Fazio Senior, and uncle, John Fazio, in a common plan or scheme to which the reputation evidence was relevant. All three defendants were tried for the same conspiracy.

12

Indeed, evidence of John Fazio's organized crime reputation would have been admitted against Fazio Junior had he been tried alone given the nature and scope of the conspiracy. Whatever prejudice there was to Fazio Junior was insufficiently severe to render the district court's decision an abuse of discretion or a miscarriage of justice. Accordingly we affirm the decision of the district court denying Fazio Junior's motion to sever.

### III. Jury Charge

We review de novo a properly preserved claim of error by the district court in instructing the jury. *United States v. Coplan*, 703 F.3d at 87. We are mindful, however, that "[t]he trial court 'enjoys broad discretion in crafting its instructions[,] which is only circumscribed by the requirement that the charge be fair to both sides.'" *Id.* (quoting *United States v. Brand*, 467 F.3d 179, 205 (2d Cir. 2006)). "A defendant challenging the district court's rejection of his proposed jury instruction 'must show that his proposed charge accurately represented the law in every respect, and that the charge actually given, viewed as a whole, prejudiced him.'" *United States v. Archer*,

13

671 F.3d 149, 158 (2d Cir. 2011) (quoting *United States v. Feliciano*, 223 F.3d 102, 116 (2d Cir. 2000)).

The Hobbs Act defines extortion as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The fear requirement may be satisfied by a fear of economic loss. *United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987) (*en banc*).

With respect to the fear element of extortion, the district court instructed the jury as follows:

> The second element [of extortion] is attaining property through wrongful use of force, violence, or fear. The second element the government must prove beyond a reasonable doubt is that the defendant wrongfully took this property by actual or threatened force, violence or fear of injury or economic harm, whether immediately or in the future.
>
> . . .
>
> The wrongful use of fear includes creating or instilling fear. A wrongful use of fear may also occur when a defendant is aware of the victim's existing fear and does or says something to exploit that fear. The fear can be a fear of economic or physical injury. Economic fear is only wrongful when it used to obtain property to which the defendant has no lawful right. The existence of fear

> must be determined by the facts existing at the time of the defendant's actions.

> Any fear created or exploited in the course of an extortion must be a reasonable fear. The fear of economic loss must be a reasonable one. Reasonable fear means that a reasonable person in the victim's position would experience similar fear. . . .

On appeal, the Fazios challenge the district court's refusal to grant the following jury instruction requested by Fazio Junior pertaining to economic loss:

> [H]owever, you may not find this element established if the economic fear was fear that he would lose an economic advantage to [which] she was not lawfully entitled. Thus an employer's fear that if they did not make certain payments, a Local 348 official or the local would not go easy on him is not sufficient to satisfy this element.

J.A. 545. The district court denied the request.

In seeking the requested jury instruction, Fazio Junior relied on *United States v. Garcia*, 907 F.2d 380 (2d Cir. 1990), *overruled on other grounds by Griffin v. United States*, 502 U.S. 46, 57 n.2 (1997), for the proposition that extortion cannot be premised on the fear of loss of an illegally obtained advantage. In *Garcia*, Congressman Garcia wanted to have the victim company, Wedtech, hire his wife as a public relations consultant in exchange for prospective political help

with government contracts. We concluded that "Garcia . . . was in effect offering to sell his congressional power, but he was not using that power as a way to intimidate Wedtech. By paying the Garcias, Wedtech was purchasing an advocate, not buying off a thug." 907 F.2d at 384. In *Garcia*, we reversed the extortion conviction because "in making the payments, [Wedtech], was motivated by desire not fear." *Id.* at 385.

During our discussion over whether Wedtech was a victim of economic extortion or rather a "shrewd, unethical business[]," we observed that "Wedtech was not risking the loss of anything to which it was legally entitled." *Id.* at 384-85. Fazio Junior, relying upon this observation, argues that extortion cannot be premised on the threatened loss of an advantage illegally obtained. *Garcia*, however, did not create such a rule. The language to which Fazio Junior points was dicta and unnecessary to our decision.

Moreover, *Garcia* is inapposite here. In *Mulder*, 273 F.3d at 107, decided a decade after *Garcia*, we upheld an extortion conviction in a situation where a coalition of labor leaders "used threats of slowdowns or work stoppages and sometimes relied on their coalition's reputation for violence to obtain no-show jobs." *Mulder*,

16

273 F.3d at 98. We distinguished *Mulder* from *Garcia* on the basis that the former "involve[d] a very different factual scenario. . . . Instead of offering access to influence [like Congressman Garcia], defendants [in *Mulder*] offered freedom from violence, property damage, and costly shutdowns." *Id.* at 107.

If Fazio Junior had requested a jury instruction that refined the distinction between a bribe to obtain a preferential treatment and an extortion payment made out of fear of economic loss, there could be no objection. But the requested instruction went further; it barred jurors from finding the "fear" element of extortion unless the victim feared losing an advantage to which he was legally entitled. This requested instruction misstates the law. None of our precedents require that the economic advantage that the victim fears losing to have been legally obtained by the victim. Our cases require simply that the victim be coerced into making the payments out of a reasonable fear of economic harm. And our cases draw a distinction between such payments and payments made, not out of fear of loss, but to receive an advantage. The former payments are extorted; the latter are bribes. Moreover, nothing in the language of the Hobbs

Act suggests that the fear of economic loss is somehow limited to the fear of economic loss to which the victim is legally entitled.

The requested instruction is flawed for another reason. It is ambiguous, and thus it is both confusing and fails to adequately inform the jury on the law. Fazio Junior requested that the jury instructions include: "Thus an employer's fear that if [he] did not make certain payments, a Local 348 official or the local would not go easy on him is not sufficient to satisfy this element." There are at least two ways to read this language: (1) "not go easy" could mean that the union would discontinue its sweetheart relationship; or (2) "not go easy" could signal that the union would engage in abuses and increase the costs of doing business beyond those related to the loss of the sweetheart relationship. The ambiguity derives from the phrase "not go easy" which, while it could simply mean cease its practice of going easy, could also mean make it very difficult.

The phrase "not go easy" is even more ambiguous because viewing the facts in the light most favorable to the government, the choice before the jury was not binary. A reasonable jury could find that the victims' payments were either (a) made to secure an economic advantage (bribe), (b) made out of a reasonable fear of

18

economic loss (extortion), or (c) made both to secure an economic advantage and out of fear that a failure to make the payments would result in economic harm beyond any loss attributed to preferential treatment. In *Garcia*, the choice was binary: "preferential treatment" or not. The requested charge is flawed because it does not account for scenario (c).

Introducing the concept of legal entitlement into the fear of loss calculus is problematic for two further reasons. First, it bears no relationship to the criminality of the defendant's extortionate conduct. The victim's fear of losing something to which the victim was not legally entitled may in some cases speak to the victim's conduct, but it does not speak to one's view of the defendant's conduct or state of mind. Second, an inquiry into the legality of the loss that is feared, invites a trial within a trial on that question. For example, in a case where the economic loss feared is the loss of proceeds of a line of credit based upon a questionable application, a defendant could insist on a trial over the issue of whether the line of credit was properly obtained. Such a mini trial would have its own complications and, in any event, would be a distraction from the main event—whether the evidence proves that the defendant, not

the victim, engaged in conduct that the criminal law proscribes as extortion.

The district court instructed the jury that "the government must prove beyond a reasonable doubt . . . that the defendant wrongfully took this property by actual or threatened force, violence or fear of injury or economic harm." The district court also advised the jury that the "fear of economic loss must be a reasonable one." The jury instruction neither "failed to inform the jury adequately of the law" nor "misled the jury about the correct legal rule." *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) (internal quotation marks omitted). Fazio Junior's requested jury instruction, in contrast, did not "accurately represent[] the law in every respect." *Coplan*, 703 F.3d at 87 (citation omitted). Accordingly, we find that the district court did not err in denying the requested jury instruction.

**IV.   Dismissal of Juror No. 5**

In the midst of the trial, the district court informed the parties that Juror No. 9 had reported to the court's deputy that Juror No. 5 had "professed love for defense counsel [and] said that she thought that the government counsel was corrupt half the time." The

following day, on May 2, 2012, the district court explained to the parties that it planned to question Juror Nos. 9 and 5 with respect to this communication. The Fazios objected to the district court's plan to question the two jurors and recommended instead that the district court simply remind the jurors that they are not to discuss the case or form opinions about guilt or innocence until deliberations. The district court, however, proceeded to question Juror No. 5 and Juror No. 9 individually. After somewhat extensive questioning, Juror No. 5 eventually conceded that she might have made the comments, but did not remember. She assured the district court that she could keep an open mind. Based on the "serious credibility issues" generated by Juror No. 5's inconsistent responses to the district court's questions, the government moved for Juror No. 5's dismissal. After hearing from all parties, the district court denied the motion.

Six days later, the government delivered its summation in chief, followed by lengthy summations by Fazio Senior's counsel and Fazio Junior's counsel. The jury was then excused for the day. That night, in a letter to the district court, the government renewed its motion to disqualify Juror No. 5. The government based its motion on Juror No. 5's conduct and responses during the May 2

inquiry and an additional alleged comment by Juror No. 5 to a fellow juror regarding the summation by counsel for Fazio Junior that the government overheard. The following morning the district court, addressing all counsel, stated that it found "more than sufficient reasonable cause to dismiss Juror No. 5" and dismissed her. The district court added that it had observed Juror No. 5 smirk, exchange knowing glances with Juror No. 4 during summation, and roll her eyes when the court reiterated its instructions not to discuss the case during breaks. The district court found that "[t]he accumulation of all of these incidences [sic] raised serious concerns . . . regarding . . . Juror No. 5's veracity when she spoke to the Court . . . and separately indicates a persistent and ongoing inability to follow instructions." The district court then asked counsel if they would "like to say anything in response to what the Court has just said." The district court heard from each of the defense counsel who objected to the decision to dismiss the juror. After hearing the arguments, the district court "explain[ed] a little bit more" the basis for excluding Juror No. 5 and reiterated that there was reasonable cause for Juror No. 5's dismissal. The district court then repeated that the juror would be dismissed, which occurred.

District courts have broad discretion under Federal Rule of Criminal Procedure 24(c) to replace a juror at any time before the jury retires if the court finds that a juror is "unable . . . or . . . disqualified to perform [her] duties." Removal of a juror is the "prerogative of the court and does not require the consent of any party." *United States v. Floyd*, 496 F.2d 982, 990 (2d Cir. 1974) (citing *United States v. Ellenbogen*, 365 F.2d 982, 989 (2d Cir. 1966)). Moreover, the Federal Rules of Criminal Procedure do not require any inquiry prior to the dismissal of a juror.

We have held that, "[a] reviewing court should not disturb the trial judge's exercise of discretion in dismissing a juror unless there is a bias or prejudice to the defendant." *United States v. Gambino*, 951 F.2d 498, 503 (2d Cir. 1991) (internal quotation marks and citation omitted). "Prejudice in this context exists when the discharge is without factual support, or for a legally irrelevant reason." *United States v. Purdy*, 144 F.3d 241, 247 (2d Cir. 1998) (internal quotation marks and citations omitted).

Although it would have been better if the district court had heard from the defense before rather than after announcing its decision, the district court did not abuse its discretion when it

23

excused Juror No. 5. Based on its interactions with Juror No. 5, the district court determined that the juror continued to violate the instructions of the court such that the district court had reasonable cause to believe that the juror could no longer serve according to her oath. No further inquiries or hearings were required and nothing done by the district court amounted to error.

****

To recapitulate, we hold that the district court did not err by (1) admitting evidence of witnesses' beliefs that the Fazios were connected to organized crime; (2) declining to give Fazio Junior's requested jury instructions; and (3) dismissing Juror No. 5. We have considered all the remaining arguments raised by defendants and find them to be without merit.

**CONCLUSION**

For the reasons set forth in this opinion the judgments of conviction are affirmed.