14-851-cr; 14-1033-cr
*United States v. Boykin*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.
CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS
PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE
PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A
SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH
THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER
MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square,
in the City of New York, on the 30th day of August, two thousand and sixteen.

Present:
> JOHN M. WALKER, JR.,
> GUIDO CALABRESI,
> PETER W. HALL,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                          Nos. 14-851-cr
                                                                   14-1033-cr

PAUL ARLINE, AKA FACE, ET AL.,

> *Defendants*,

ANTHONY BOYKIN, AKA DOUBLE O,

JUSTIN SIMMONS, AKA JUSTO,

*Defendants-Appellants.**

_____

For Anthony Boykin:          JAMES M. BRANDEN; Lisa Scolari, Law Office of
                             James M. Branden, New York, New York

For Justin Simmons:          BENJAMIN GREENWALD, The Law Office of
                             Benjamin Greenwald, New Windsor, New York

For Appellee:                MICHAEL D. MAIMAN, Assistant United States
                             Attorney (Emil J. Bove, III, Michael A. Levy, Assistant
                             United States Attorneys, *on the brief*), *for* Preet Bharara,
                             United States Attorney for the Southern District of New
                             York

Appeal from final judgments of the United States District Court for the
Southern District of New York (McMahon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED** that the judgments are **AFFIRMED** for the
reasons that follow and those stated in a separate opinion filed concurrently with
this summary order.

Anthony Boykin and Justin Simmons stand convicted of numerous offenses
stemming from their participation in a racketeering enterprise and conspiracy, and
a narcotics conspiracy. Boykin challenges the sufficiency of the evidence with
respect to one of his counts of conviction, the admission of certain statements at

---

* The Clerk of Court is requested to amend the official caption in this case to conform to the
listing of the parties above.

trial, the dismissal of a juror, and the denial of his request to compel the Government to immunize a defense witness. Simmons challenges the sufficiency of the evidence with respect to his participation in the racketeering conspiracy and his sentence based on multiple convictions for firearms offenses, an issue we address in a separate opinion. With respect to the matters addressed here, we assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## A. Sufficiency of the Evidence

"A defendant challenging the sufficiency of trial evidence bears a heavy burden, and the reviewing court must view the evidence presented in the light most favorable to the government and draw all reasonable inferences in the government's favor." *United States v. Gagliardi,* 506 F.3d 140, 149 (2d Cir. 2007) (internal quotation marks omitted). "We will affirm if any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Burden*, 600 F.3d 204, 214 (2d Cir. 2010). We review *de novo* challenges to the sufficiency of the evidence supporting a conviction. *United States v. Coplan,* 703 F.3d 46, 62 (2d Cir. 2012).

### i. Boykin's Conviction for Conspiracy to Murder and for the Murder of Lamont Young

Boykin argues that the evidence was insufficient to prove that he conspired to murder, and did murder, Young. The Government, however, presented ample evidence of Boykin's guilt. In particular the Government offered testimony and other evidence that established, among other facts, the following. Boykin knew that Young was a "snitch"—an offense the Newburgh Bloods consider punishable by death—and offered "status" in the Newburgh Bloods to any member who killed Young. A man identified as Boykin walked into the bar where Young was killed carrying a gun seconds before Young was murdered. Security camera footage showed a similarly dressed individual emerge from the bar seconds after the murder. On the night of Young's murder, Boykin got into the car of a fellow Bloods member (wearing a ski mask and a backpack, as shown in the surveillance video), and told that member that he had just "shot [Young] in the head" "with a .38 Special." Tr. 1048-49. As Boykin stepped out of the vehicle, he stated "this is what happens when you snitch on one of us." Trial Tr. 1150. Antwan Robinson, a fellow member of the Newburgh Bloods, admitted that he set up Young on Boykin's order. Based on this and other evidence, a "rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *Burden*, 600 F.3d at 214.

While Boykin points to other individuals who may have had a motive to kill Young, the evidence described above was sufficient to convict Boykin of the murder. Boykin faults the Government's case for being circumstantial, but "the prosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002); *see also United States v. Kwong,* 14 F.3d 189, 193 (2d Cir. 1994) (holding that, in an attempted murder prosecution, "[i]dentity can be inferred through circumstantial evidence"). Boykin also attacks the credibility of certain Government witnesses. It is well established, however, that "[w]here there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Persico,* 645 F.3d 85, 104 (2d Cir. 2011). As we have previously stated, "the proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury." *United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) (internal quotation marks and alteration omitted).

Boykin argues further that "the whole of the evidence showed that Mr. Boykin was not the murderous kind" because, "other than with regard to Young, there was no other testimony that Mr. Boykin ordered a shooting or shot at anyone." Boykin Br. 50-51. Boykin's tendency, or lack thereof, to commit murder is not an essential element of the crime and does not fall within the purview

5

of sufficiency review. *See Burden*, 600 F.3d at 214 ("We will affirm if any rational finder of fact could have found the *essential elements* of the crime beyond a reasonable doubt" (emphasis added)).[2] Although Boykin argues that the jury's mixed verdict "constitute[d] a clear sign that the government's evidence was, in many important regards, weak and equivocal," Boykin Br. 52, "it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty," *United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994); *see also United States v. Powell*, 469 U.S. 57, 66 (1984) (rejecting as "imprudent and unworkable[ ] a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them").

ii.     **Simmons's Conviction for Participation in a Racketeering Conspiracy**

A conviction for participation in a racketeering conspiracy "requires proof, *inter alia*, that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering." *United States v. Basciano*, 599 F.3d 184, 199 (2d Cir. 2010). "[T]he conduct prong requires only that conspirators

---

[2]  Even assuming that Boykin had never been involved in a prior shooting, the evidence was sufficient for the jury to find that he had murdered Young, and any argument regarding his pacific nature was one for the jury to consider.

6

reached a meeting of the minds as to the operation of the affairs of the enterprise through a pattern of racketeering conduct." *Id.* The pattern element, meanwhile, "demands proof of an agreement to commit at least two crimes." *Id.*

Contrary to Simmons's argument, the Government was not required to prove that he personally committed or agreed to commit at least two predicate acts. *See United States v. Cain*, 671 F.3d 271, 291 (2d Cir. 2012) ("[A] conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts . . . ."); *see also United States v. Yannotti*, 541 F.3d 112, 129 n.11 (2d Cir. 2008) (explaining that "to prove a defendant's membership in the agreement, the government need not prove that the defendant committed or agreed to commit any of the charged predicate acts as long as the government proves that he participated in some manner in the overall objective of the conspiracy"). Even if we were to consider the argument, it fails. Simmons asserts that the jury could have relied on only two predicate acts to convict him of a racketeering conspiracy: narcotics distribution and witness intimidation. He does not challenge the proof of the predicate act of narcotics distribution. He challenges only the proof of the predicate act of witness intimidation. The evidence supporting the latter, however, was sufficient for the jury to find that Simmons attempted to persuade Henry Rich

7

not to testify.[3]  *See* 18 U.S.C. § 1512(b)(3) (a person may be convicted of witness intimidation by, among other things, "corruptly persuad[ing] another person, or attempt[ing] to do so, . . . with intent to . . . prevent communication . . . of information relating to . . . a Federal offense"); *cf. United States v. Veliz*, 800 F.3d 63, 70 (2d Cir. 2015) (holding that defendant violated 18 U.S.C. § 1512(b)(3) when he "attempted to persuade [others] to act in such a way as to prevent [a potential witness] from communicating to the authorities information about" certain offenses).  Proof of the predicate acts of narcotics distribution and witness intimidation was sufficient to satisfy the pattern element and thus to prove a racketeering conspiracy.  *See Basciano*, 599 F.3d at 199.[4]

## B. Juror Dismissal (Boykin)

District courts have "broad discretion . . . to replace a juror at any time before the jury retires if there is reasonable cause to do so, and a reviewing court will only find abuse of that discretion where there is bias or prejudice to the defendant." *United States v. Thompson*, 528 F.3d 110, 121 (2d Cir. 2008).  "Prejudice in this context exists where the discharge is without factual support, or for a legally

---

[3] We need not address witness intimidation in connection with Simmons's statements to Seth Hinson.

[4]  Simmons does argue that his acquittal of other substantive racketeering offenses precluded those acts from being considered as predicate acts by the jury.  We need not address this argument because, in any event, the jury could properly consider narcotics distribution and witness intimidation as predicate acts.

8

irrelevant reason." *United States v. Purdy*, 144 F.3d 241, 247 (2d Cir. 1998) (internal quotation marks omitted).

The district court dismissed a juror after that juror was observed listening and watching a proceeding not meant for the jury. When questioned about the incident, the juror gave inconsistent answers about what had happened. Based on this conduct, the district court had "reasonable cause" to dismiss the juror.[5] *See United States v. Fazio*, 770 F.3d 160, 170 (2d Cir. 2014) (finding no abuse of discretion when district court "determined that the juror continued to violate the instructions of the court such that the district court had reasonable cause to believe that the juror could no longer serve according to her oath").

**C. Admission of Statements Regarding Boykin's Murder of Lamont Young**

"We review evidentiary rulings for abuse of discretion." *United States v. Mercado,* 573 F.3d 138, 141 (2d Cir. 2009). This Court reviews an erroneous admission of evidence for harmless error. *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009). "A district court's erroneous admission of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Al-Moayad*, 545 F.3d 139, 164 (2d Cir. 2008) (internal quotation marks omitted).

---

[5] Contrary to Boykin's argument, the district court properly investigated the alleged juror misconduct by holding a brief hearing, which was not required in these circumstances in any event. *See Fazio*, 770 F.3d at 170 (if reasonable cause exists to dismiss a juror "[n]o further inquiries or hearings [are] required").

### i.  Robinson's Statement to David Evans

Initially, we note that Boykin fails to challenge the district court's alternative finding that Robinson's statement to Evans was admissible as a statement against penal interest.  We may therefore deem waived any challenge to this alternative finding and affirm on that basis.  *See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) (declining to address the merits of appellants' challenge because appellants failed to address the district court's alternative basis for its ruling).  Regardless, the district court did not err in admitting Robinson's statement under Federal Rule of Evidence 801(d)(2)(E).

A statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  To admit a statement under this rule, the district court must find by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. James,* 712 F.3d 79, 105 (2d Cir. 2013).  "We review a district court's admission of evidence under Rule 801(d)(2)(E) only for clear error . . . ." *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012).

It was not clear error for the district court to find that Robinson's statement to Evans was made in furtherance of the racketeering and narcotics conspiracies.

10

Robinson's statement furthered those conspiracies because the evidence suggested that Young was murdered for providing information to law enforcement, which, of course, could jeopardize the continuing viability of the conspiracies. *See United States v. Arrington,* 867 F.2d 122, 130 (2d Cir. 1989) (holding that a "plot to silence witnesses further[ed] the goals" of a narcotics conspiracy); *see also United States v. Young*, 561 F. App'x 85, 88 (2d Cir. 2014) (unpublished) (holding that statements "furthered the charged narcotics conspiracy insofar as they referenced a plot to retaliate against [a co-defendant] for providing a statement to law enforcement"). Accordingly, because Young, as an informant, clearly had the potential to interrupt the Newburgh Bloods' operation, Robinson was updating Evans on "the progress or status of the conspiracy" when he

informed Evans of Young's death. *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014). In addition, by describing what had happened to Young, Robinson's statement to Evans served to remind Evans of what happened to "snitches"—both encouraging Evans to come forward with information of any other informants and discouraging Evans from becoming an informant himself. *See United States v. Carson*, 455 F.3d 336, 367 (D.C. Cir. 2006) (statements admissible under Rule 801(d)(2)(e) when the "information could have served several functions: to update [a co-conspirator] on eliminated threats—that is, to give the 'all clear'; to remind [him] to keep an ear open for more threats; to

11

encourage him to weed out other witnesses against them; and to make sure [he] did not consider turning against the conspiracy (that is, to motivate his continued participation)"). Robinson also told Evans that he assisted Boykin with Young's murder to demonstrate that if he (Robinson) did not follow Boykin's order, he would have suffered violent consequences. This statement served to further the conspiracies because it reinforced the Newburgh Bloods hierarchy and was a reminder to Evans to obey orders from Boykin.

### ii.  Wayne's Statement

"For out-of-court statements to be received in evidence for a purpose other than their truth, the proponent must satisfy Federal Rules of Evidence 401 and 403, that is, (1) the non-hearsay purpose for which the evidence is offered must be relevant and (2) the probative value of the evidence for this non-hearsay purpose must not be outweighed by the danger of unfair prejudice." *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006).

As the district court made abundantly clear in its limiting instruction to the jury, it did not admit Wayne's statement "I heard you killed my brother" as proof that Boykin did, in fact, kill Wayne's brother. The evidence was not offered for the truth of the matter asserted but to prove that the prior statement was made and to provide context for Boykin's response. *See United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) ("So long as the informant's recorded statements are not

12

presented for the truth of the matter asserted, but only to establish a context for the recorded statements of the accused, the defendant's Sixth Amendment rights are not transgressed."); *see also Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974) ("Of course, evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement."). Wayne's statement and Boykin's response were probative of Boykin's guilt in that Boykin had the opportunity to deny his involvement in Young's murder but did not do so.

Boykin argues that the statement was unfairly prejudicial because "the jury was certain to disregard the limiting instruction" and draw a string of inferences. Boykin Br. 64. The court's careful limiting instruction, however, reduced the risk of unfair prejudice. *See United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (potential unfair prejudice offset when district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"); *see also United States v. Snype,* 441 F.3d 119, 129 (2d Cir. 2006) (noting that "the law recognizes a strong presumption that juries follow limiting instructions"). Moreover, because the abundant evidence outlined above, including testimony from Evans about Boykin's involvement in Young's murder, was independently far more than sufficient to sustain Boykin's conviction for Young's murder, the admission of Wayne's statement was at most harmless error. *See Al-Moayad*, 545 F.3d at 164.

**D. Boykin's Request to Compel the Government to Immunize a Potential Defense Witness**

This Court reviews for abuse of discretion a district court's decision not to compel the government to immunize a witness. *United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006). "The government is under no general obligation to grant use immunity to witnesses the defense designates as potentially helpful to its cause but who will invoke the Fifth Amendment if not immunized." *Ebbers*, 458 F.3d at 118; *see United States v. Diaz*, 176 F.3d 52, 115 (2d Cir. 1999) ("Absent extraordinary circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered whenever it seems fair to grant it." (internal quotation marks omitted)).

The district court did not abuse its discretion in denying Boykin's request to compel the Government to grant immunity to Sukeem Bryant. Compelling the government to grant immunity is appropriate "[o]nly when a prosecutor has abused the government's ability to grant immunity by using it in a discriminatory fashion for the purpose of gaining a tactical advantage." *Diaz*, 176 F.3d at 115 (quoting *Blissett v. Lefevre*, 924 F.2d 434, 442 (2d Cir. 1991)). As Boykin concedes, the Government did *not* offer statutory immunity to *any* witnesses. It follows that the Government could not grant immunity in a discriminatory fashion if it did not grant immunity at all. And Boykin does not cite any authority for the proposition

14

that the benefits derived from the negotiation of a plea agreement are akin to the grant of statutory immunity.[6]

We have considered all of Boykin's remaining arguments, and all of Simmons's remaining arguments that are not addressed in the accompanying opinion, and find them to be without merit. For the reasons stated above and in the accompanying opinion, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[6] Even if we considered the plea agreement process in making such a comparison, Boykin does not assert that, during plea negotiations, Bryant asked for and was denied benefits similar to those offered to the Government's witnesses. There are myriad reasons, moreover, why the Government may decide to engage in the plea bargaining process other than to secure favorable testimony. And it is common for the Government to dismiss charges or decline to prosecute other conduct when entering into a plea agreement. *See, e.g., United States v. Morgan*, 91 F.3d 1193, 1196 (8th Cir. 1996) (describing the "offer to drop specific charges" as a "normal plea discussion event[]"); Fed. R. Crim. P. 11(c)(1)(A) (explaining that "the plea agreement may specify that an attorney for the government will . . . not bring, or will move to dismiss, other charges").